Harlow vs. Sparr.

---

HARLOW, PLAINTIFF IN ERROR, vs. SPARR, DEFENDANT IN ERROR.

1. An auctioneer to whom commissions are due for his services in selling goods, has a right to appropriate so much of the money, arising on the sales, as may be due to him for his commissions, to the payment of his individual debts, to a purchaser at such sale.

## ERROR to St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

On the 27th of December, 1850, plaintiff in error began suit before Justice Mann Butler on an account, which is as follows, to-wit:

Harlow vs. Sparr.

St. Louis, December 9, 1850.

"Mr. John H. Sparr,
    Bought of Wm. M. Harlow:

Two Walnut Wardrobes at $10 50······ ····· ········· ······ ······ ······· ····· $21 00
Six    "    Cane Seat Chairs, 1 95····· ····· ······ ····· ····· ····· ····· ···· 11 70
One Elizabeth Rocking Chair···· ······ ······ ······ ······· ······ ···· ······ ···· 14 50

$47 20"

A trial was had, and the verdict and judgment were for the defendant in error.

The plaintiff in error duly appealed therefrom, and thereby the case went up to the S. Louis court of common pleas. Upon trial there, the following evidence was, in substance, given, to-wit:

That plaintiff had a furniture store in the city of St. Louis, and advertised an auction sale of furniture at his store, by large handbills publicly put up, stating the place of sale, the name of the proprietor and the name of one Mr. Mandell as the auctioneer. That the defendant attended the sale and purchased the articles sued for, at the prices stated. That the sister of the defendant also purchased, at the same sale, about $80 worth. That bills of both purchasers were made out, in the name of the plaintiff, by the clerk of said Mandell, at the plaintiff's store, and handed to the defendant, who took them home, and got the money ready and was going to the store to pay for them, when said Mandell came in with the bills, and defendant was about to pay him the money, and Mandell said that the plaintiff was owing him for commissions for selling, $80 and $40 for other goods sold; that as he, Mandell, was owing defendant for the board of himself and wife, at defendant's hotel, in St. Louis, about $75, that this might be applied on the bills, which was accordingly done, leaving a balance of about $40 which defendant paid Mandell, and therefore Mandell receipted the bills. The next day, plaintiff's clerk called upon defendant for the payment of the bills, which defendant refused to pay, because of said settlement with Mandell. Thereupon plaintiff sued defendant.

The sale continued about a week, and after said settlement with Mandell. The further selling was by another auctioneer, Mandell becoming sick the next day after said settlement.

It was shown to be the custom with auctioneers to make out the bills, take pay and give receipts. Mandell testified that he had received a piano forte from another person to sell; that it was taken to Harlow's rooms and sold, on the occasion of Harlow's sale, for $15, the amount received by Harlow, but that he, Mandell, has accounted to the owner for it. That he settled with defendant for his bill and that of his sister, and one other small bill of $7. That after crediting Harlow for what he received on said bills and charging him for the proceeds of said piano, and his commissions and expenses in selling as auctioneer, Harlow still owes him $67. That he had no express authority from Harlow to collect bills.

The plaintiff asked the court to give the following instructions, to-wit:

"No custom or usage is sufficiently proved in this case to make it of the effect of a law or of advantage to the defendant."

"A person authorized to sell as auctioneer is not thereby authorized to collect the proceeds of sale when the sale is made in the proprietor's name and in his store."

"If Mandell was authorized by custom, law or express authority to collect the proceeds of the sales testified about in this case, a settlement with him, by the defendant, for a purchase, by applying thereto a debt of his against Mandell, was not a good payment and binding upon the plaintiff."

All these the court refused to give, and the plaintiff duly excepted thereto.

For the defendant was asked the following instruction, to-wit:

"An auctioneer is entitled to receive payment, and may give discharges to purchasers at his auction sales, and if such auctioneer has a claim on his principal for commissions and charges, he may credit purchasers at such sales with his private debts to them, not exceeding the amount of such commissions and charges." Which instruction the court gave, and thereupon the court, sitting as a jury, rendered a verdict for the defendant.

To the giving of said last instruction the defendant duly excepted. The plaintiff in due time filed a motion to set aside said verdict and grant him a new trial, for the following reasons, to-wit:

1. Because the court erroneously refused to give the instructions asked for by plaintiff.

2. That the court erred in giving the instruction asked for by defendant.

3. That the verdict is against the law under the evidence.

The court refused to grant this motion, to which decision the plaintiff duly excepted. Final judgment for the defendant was rendered upon said verdict. Plaintiff duly filed his bill of exceptions, which was signed, and thereupon sued out a writ of error, upon said judgment, to this court.

Todd & Krum, for plaintiff in error.

I. The fact of Mandell's being employed as auctioneer, did not give him, under the circumstances of this case, authority to collect the purchase moneys.

II. Even if Mandell had authority to collect the purchase moneys, a settlement by him, with Sparr, by allowing him a credit of a debt he owed to Sparr was not binding upon Harlow: 7 N. H. Rep. p. 446; 1 Green Iowa Reps. 360; Story on Agen. Secs. 98, 99, 181, 413, 430; 1 Porter's Rep. 212. The owner could not appropriate the money collected by him in payment of a debt which he, the principal might at the time owe him: 5 N. H. Rep. 297, Morse vs. Wood.

Field, for respondent.

I. An auctioneer may sue for, receipt for and discharge an account for goods sold by him as auctioneer, even though the sale took place at the known house of the principal: (Leading cases) Williams vs. Millington, 1 H. B. 81. See also 2 Smith's Leading cases (last Am. Ed.) 308.

II. If an agent sells goods and the purchaser makes payment to him under the belief that the sale is to pay advances, such payment is good, though the belief be mistaken: Warner vs. McKay, 1 M. & W. 595.

III. By the dictates of common sense, the auctioneer may do as he pleases with the proceeds of the sale, to the extent of his charges and commissions, for, so far he alone is interested.

On this last point the case was decided below. Story on Agency 407.

In Story on Agen. § 408 ad finem, the case at bar is actually put and decided: Hulson vs. Granger, 5 B. & A. 27; 7 Com. Law Rep. 10.

Ryland, J., delivered the opinion of the court.

From the above statement, the question for our adjudication involves the right of an auctioneer, to whom commissions are due for his services in selling goods, to appropriate so much of the money, arising on the sales, as may be due to him for his commissions, to the payment of his individual debts to a purchaser at such sale.

The authority of an auctioneer, to collect the money due on his sales, to sue for it, receipt for it and discharge an account against the pur-

chaser thereof, is fully maintained by the authorities cited in the brief of the respondent. In the case cited, 1st Henry Blackstone's Rep. 81, the court held, that an auctioneer, employed to sell the goods of a third person, by auction, may maintain an action, for goods sold and delivered, against a buyer, though the sale was at the house of such third person, and the goods were proven to be his property. Lord Loughborough said, that "an auctioneer had a special property in him, with a lien for the charges of the sale, the commission, and the auction duty, which he is bound to pay," Heath, Justice, in this case said : "It is the same thing, whether, goods be sold on the premises of the owner, or in an auction room : the possession is in the auctioneer, and it is he, who makes the contract. He has special property in them."

Story lays down the law to be, that when a factor or other agent has a lien for advances, or otherwise, to the full extent of the price or value of goods sold by him, he is entitled to receive payment of the proceeds from the purchaser, not only in opposition to his principal, but in opposition to his assignees, in case of bankruptcy. If he is indebted to the purchaser of the goods, he may set off the one debt against the other, with the assent of the purchaser; and it will be a complete payment and extinguishment of the price, so as to bar any action therefor, by the principal or his assignees : Story on Agency.

In the case at bar, the auctioneer had, in our opinion, the right to collect the purchase money from the defendant, Sparr, or to settle with him, and to allow him credit on the purchase of the goods, not to exceed the commission due to the auctioneer on the auction sales, and such allowance, settlement and payment will be a complete bar to the present plaintiff's right to recover.

The judgment of the court of common pleas, is, with the concurrence of my brother judges affirmed.