JOHN A. ELISON ET AL.

v.

MEYER WULFF.

*Sales—Auction—Action against Auctioneer—Mistake—Evidence—Question for Jury.*

1. An action lies against an auctioneer, who has assumed the delivery of goods sold by him, for failure to deliver.
2. In the case presented, it was a question of fact for the jury, whether the defendants undertook to deliver the goods in question.

[Opinion filed May 31, 1888.]

APPEAL from the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding.

Messrs. FREEMAN & WALKER, for appellants.

All the witnesses for appellee state that they knew appellants' business to be that of auctioneers. It appears, therefore, that appellants took special pains to disclose their character as agents by the postal card, by the advertisement, as well as by the knowledge conveyed to appellee, that appellants were acting in the character of auctioneers and agents only. Hence, appellants could not be liable upon any contracts of sale made by them as such agents. Milligan v. Jones, 77 Ill. 373.

The half barrel of cherries having been put up for sale by mistake, both as to contents and ownership, and bid off by Wulff by mistake as to contents, the minds of the parties did not meet; there was no contract and no valid sale.

Says " Parsons on Contracts," 5th Ed. p. 475: " There is no contract unless the parties thereto assent, and they must assent to the same thing in the same sense." And on page 494 of the same edition the author used the following language, speaking of sales at auction: " And even if it be provided in

the terms of the sale that any error or misstatement in the description shall not avoid the sale, but be allowed for in the price, said provision will not cover any misstatement of a substantial and important character; but the purchaser may, on that ground, rescind the sale; as, if an auctioneer sells lot A to one who in good faith, without fault, supposes he is buying lot B, there is no sale and no contract between the parties for want of agreement of minds."

Mr. H. C. BENNETT, for appellee.

MORAN, P. J. Appellants, Elison, Flersheim & Company, were engaged as auctioneers to sell at auction the wholesale stock of groceries of S. P. Farrington & Company. They sent out postal cards to the trade, announcing the sale, in the following words:

"Auction Notice. S. P. Farrington & Co., 4 and 8 Lake Street, retiring from business, will sell their entire stock of groceries at auction, Tuesday, January 29th, at 10 A. M. Also store fixtures, 1 iron safe, etc.

"ELISON, FLERSHEIM & Co.,

"Auctioneers."

Appellants also advertised the sale in a newspaper in substantially the same terms as in the card. Appellee claims to have heard of the sale from an acquaintance, but admitted receiving a card with notice of the auction.

He attended the sale and purchased a number of articles, and, among other things knocked down to him, was a "barrel and contents," at the price of 60 cents. Though it does not appear that what the barrel contained was stated at the time it was sold, it was supposed by appellee to contain dried currants; but, on examination after it was knocked down to him, he found it contained dried cherries, and was, therefore, worth upward of $30. When appellee came to remove and pay for the goods which he had purchased, he was told by the clerk of appellants that the "barrel and contents" had been previously sold at private sale by Farrington & Company and rolled in the lot by mistake. The "barrel and contents" were crossed

off the bill that had been made of the goods which appellee bought, and the 60 cents deducted, and appellee paid for the remainder of the goods sold to him and took them away, appellants' clerk delivering the goods to him, and a bill of the items headed, "Bought of Elison, Flersheim & Company, Auction and Commission Merchants," and indorsed at the foot, "Paid E. F. & Co."

The next day appellee returned and demanded the barrel of cherries and tendered to appellants' clerk the 60 cents, but the clerk said he had not got the barrel and could not deliver it. The sale was had at Farrington's store, and appellee knew that appellants were auctioneers.

Appellee recovered in the court below a verdict for the sum of $34, and to reverse the judgment entered thereon it is urged: 1st, that there was no contract, as the putting up the barrel was a mistake, it having been sold previously at private sale; 2d, that the appellants acted as agents of Farrington & Company in making the sale, and, therefore, the suit, if it can be maintained at all, should be against the principal, and not against appellants.

To the first point it may well be said that there is no evidence in the record from which it must be concluded that there was any mistake in the sale of the barrel.

Appellants' clerk swears that he found out from Farrington & Company that the barrel had been included in the goods sold by mistake. That is evidence merely as to the conclusion he arrived at from what some one told him, but is very far from being evidence of the truth of the alleged fact. But if the barrel ought not to have been sold, then, in selling it, appellants exceeded their authority and are liable to the purchaser upon the implied warranty of authority. Story on Agency Sec. 264; White v. Madison, 26 N. Y. 117; Bateman on Auc tions, 33.

On the second point the rule of law is well settled. Story says, Sec. 267: "Thus, where a contract is made with an auctioneer for the purchase of goods at a public sale, and no disclosure is made of the principal on whose behalf the commodity is sold, the auctioneer will be liable to the purchaser

to complete the contract, although, from the nature of the public sale, it is plain that he acts as agent only." In Babington on Auctions, 9th Law Library, Sec. 185, the rule is thus stated: "When an auctioneer does not disclose the name of his principal at the time of the sale, he is personally liable to an action for damages for not completing the contract." And in Addison on Contracts, it is said: "If an auctioneer sells commodities without saying on whose behalf he sells them, the purchaser is entitled to look to him personally for the completion of the contract." Mills v. Hunt, 20 Wend. 431.

This rule seems to be applied most strongly against an auctioneer who sells personal property or merchandise, for the reason that he has a possession coupled with an interest in the goods which he is employed to sell, and not a mere custody. In Williams v. Millington, 1 H. Bl. 81, Lord Loughborough said: " An auctioneer has a possession coupled with an interest in goods which he is employed to sell, not a bare custody like a servant or shopman. There is no difference whether the sale be on the premises of the owner or in a public auction room, for on the premises of the owner an actual possession is given to the auctioneer and his servants by the owner, not merely an authority to sell. I have said a possession coupled with an interest; but an auctioneer has also a special property in him, with a lien for the charges of the sale."

In Woolfe v. Horne, 2 Q. B. D. 355, Field, J., citing Williams v. Millington, says: "It must be remembered that auctioneers have much larger rights than ordinary agents. The actual delivery of the goods is intrusted to them; they have a lien on the goods for the charges, and their possession of the goods is complete till delivery. Now, assuming the defendants could have sued the plaintiff for the price of the goods, had not the plaintiff a correlative right to sue them for the non-delivery?"

The case in which the above language was used, was an action against the auctioneers for a failure to deliver where the printed notices or catalogues issued, were headed: "Great Western Railway Company. Catalogue of unclaimed property, etc., which will be sold at auction by Messrs. H. & E.

(the defendants), on Tuesday, etc. By order of the directors of the above company," etc.; and it was claimed on behalf of the auctioneers that they had disclosed their principals and were, therefore, not liable, but the court held that the action was properly brought against them for a failure to deliver.

In Jones v. Littledale, 6 Adolph. & E. 468, the case went against the auctioneers, on the fact that after the auction they made a bill of the goods in their own names, though the advertisement of the sale disclosed the names of the owners. Now, in the case at bar, appellants made the bill or invoice of the goods in their own names, collected the money for the goods and assumed the delivery of the goods. This was all in the line of their regular duties as auctioneers, and we can not say that it did not justify the inference that in making the sale they did undertake to deliver to the purchaser the goods sold. The question as to whether they made such a contract with appellee in this case, was one of fact for the jury to determine from a consideration of all the evidence in the case. Though appellants were certainly dealing as agents, it does not follow that in view of their calling and all the circumstances in the case they did not bind themselves at the same time they bound their principals.

As the instructions given by the court below were more favorable to the defendants than the authorities would warrant, appellants can have no advantage of errors of law, and we do not feel authorized to say, in view of all the circumstances, that the jury drew the wrong inference of fact.

The judgment will therefore be affirmed.

*Judgment affirmed.*