CHARLES P. MOORE

*v.*

CHARLES B. DURNAM et al.

[Filed February 18th, 1902.]

1. Equity has jurisdiction of an action on a lost check, where made to the maker's own order, and transferred for value without endorsement; the endorsee in such case having only an equitable title.

2. Defendant, on agreeing to purchase land, deposited a check for less than one-tenth the consideration to be paid, agreeing to forfeit the sum deposited in case he did not carry out the agreement and take the deed. —*Held*, stipulated damages and not a penalty, and therefore, the check being lost, complainant's claim was enforceable in equity.

*Mr. William J. Backes,* for the complainant.

*Mr. Martin P. Devlin,* for the defendants.

REED, V. C.

This suit is brought to collect a lost check. The facts proved are these: Moore owned a farm, upon which was a mortgage; he agreed to sell part of this farm to Durnam. Durnam was to pay the mortgage on the entire farm and all costs which had accrued upon a suit brought to foreclose the said mortgage, and all taxes upon the farm, such payments not to exceed in the aggregate $5,000. This payment was to be made on the 8th day of October, 1900. In the written agreement embodying these terms is the following clause:

"The party of the second part [Durnam] agrees to pay, on the signing of the agreement, the sum of $450, which he agrees to forfeit, in case he does not carry out this agreement, and receive his deed for part of the farm hereby agreed to be conveyed."

By a separate clause, the parties bind themselves to perform all the covenants in the agreement, and they agree to pay, upon

Moore *v.* Durnam.

failure to perform the same, the sum of $450, which they fix and settle as liquidated damages.

On the day when the agreement was signed, a check for $450, made by Durnam to his own order, drawn upon and certified by the Broad Street National Bank, was delivered to ex-Sheriff Bergen, who acted as the agent of Moore, in payment of the sum of $450, mentioned in the agreement. The check was not endorsed by Durnam, but this fact was not observed by Sheriff Bergen at the time of its delivery to him. Sheriff Bergen lost the check, and Mr. Moore refused to take the property according to the agreement. This suit is now brought to recover the amount of the lost check.

The jurisdiction of a court of equity over lost writing results from the inadequacy of any legal remedy. The aid of a court of equity may be invoked to compel the re-execution of a lost deed or other lost writing, or it may be invoked to recover money due upon a lost instrument. In the first instance, the inability of a court of law to compel the re-execution of the instrument is apparent. In the second instance, where the lost instrument was one executed under seal, the technical rule which required profert of a sealed instrument in an action at law deprived the obligee of his legal remedy upon such lost instrument. When the lost instrument was not under seal, but was negotiable, and lost before maturity, no action at law could be brought upon it. The lost instrument may have passed into the hands of some holder for value, and the maker of the lost paper is entitled to indemnity against his liability to answer to such a holder before he can be compelled to pay. Whether the same rule applies to a non-negotiable instrument has been the subject of some contrariety of opinion. Mr. Pomeroy says, however, that the jurisdiction of courts of equity is sustained by the weight of authority in suits upon non-negotiable as well as upon negotiable instruments. *2 Pom. Eq. Jur.* § *832.*

In the present case, the fact that there was no endorsement of the check delivered to Sheriff Bergen, and therefore only an equitable title passed to him, is an additional reason for retaining jurisdiction in this court.

7

Moore *v.* Durnam.

Upon the merits of the litigation, the only point urged on behalf of the defendants which seems to me to possess any semblance of substance is that the sum of $450 mentioned in the agreement is to be regarded as a penalty for its non-performance, and that a court of equity will not enforce a penalty.

The testimony exhibits the following conditions:

*First.* That the check was delivered as a deposit, which, by the terms of the agreement, was to be made at the time of its execution, and which deposit, Moore, the purchaser, agreed to forfeit in case he did not carry out his agreement and receive the deed.

*Second.* That the forfeiture of this sum was to occur, not upon the failure of the purchaser to comply with any of the number of covenants, some important and others trivial, but was to occur upon his failure to take the property and pay for it.

*Third.* The sum to be forfeited was not unreasonably disproportioned to the subject-matter of the contract, being less than ten per cent. of the consideration to be paid.

That the sum to be paid, upon the execution of the instrument, was the deposit is entirely clear; and the rule respecting deposits by a purchaser seems to be that it is considered as a part payment of the purchase-money, and not a mere pledge. *1. Sudg. Vend. & P. ch. 1* § *3* ¶ *16.* A deposit being regarded as part payment, it follows that if the vendor seeks to recover from the defaulting purchaser damages beyond the amount deposited, the deposit must be taken into account. *Ockenden* v. *Henry, El., B. & E. 485.*

The rule is entirely settled that a part payment of the purchase-money cannot be recovered by a purchaser, if he causelessly refuses to execute his contract. *Woods Mayne Dam. 245; 2 Wharl. Cont. 743; Warw. Vend. 927; Hinton* v. *Sparks L. R. 3 C. P. 161; Hansbrough* v. *Peck, 5 Wall. 497; Lawrence* v. *Miller, 86 N. Y. 132; Donohue* v. *Parkman, 161 Mass. 412.*

Equity can undoubtedly relieve a purchaser who has made a deposit under certain conditions. Where the agreement for the performance of which the deposit was made was entered into by accident or mistake, equity will relieve, as in all other cases.

Aside from these incidents, the rule of law is the same as in equity in respect to the right to recover any or all of such deposits; and the rule is that unless it appears clearly from the contract that the amount paid or deposited is understood by the parties to be a mere pledge for the performance of the contract, and not a liquidated sum, to be lost in case the payer of the deposit groundlessly refuses to perform, neither will grant the defaulting party relief.

If the present sum is to be regarded as stipulated damages, equity will not interfere for the purpose of relieving the purchaser. *1 Pom. Eq. Jur.* § *440; 11 Story Eq. Jur.* § *1318.*

The intention of the parties to regard this as a stipulated sum is manifest, and the intention of the parties is said to control.

This intention, it is true, is to be discovered by the application of certain rules. *Monmouth Park Association* v. *Wallis Iron Works, 26 Vr. 132, 140.* None of those rules would relieve this deposit from the character of stipulated damages, for, as I have already remarked, the sum deposited is not excessive nor is it to be forfeited upon the failure to perform a variety of covenants, some of a trivial character, and the damages resulting from a breach of the contract are uncertain in amount. The question now propounded is discussed in its various phases in the following cases: *Palmer* v. *Temple, 9 Ad. & E. 508; Horton* v. *Sparks, supra; Ex parte Barrell; In re Parnell, 10 Ch. App. 512; Lea* v. *Whitaker, L. R. 8 C. P. 70; Catton* v. *Bennett, 51 L. T. (N. S.) 70; Essex* v. *Daniell, 32 L. T. (N. S.) 476; Collins* v. *Stimson, 48 L. T. (N. S.) 828; Haynes* v. *Hart, 42 Barb. 58; Green* v. *Green, 9 Cow. 46; Thompson* v. *Kelly, 101 Mass. 297; Woodbury* v. *Turner, 96 Ky. 459,* and cases already cited.

The sale of four or five acres of the property by the complainant since the defendant refused to take the property does not impair the complainant's right to the check. *1 Sudg. Vend. marg. 41.*

I will advise a decree for the complainant.