**THOROUGHBRED HORSEMEN'S ASSOCIATION OF TEXAS, INC., Appellant,**

v.

**J. Eddie DYER, Appellee.**

No. 14–93–00239–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 24, 1995.

---

Kevin J. McEvily, Tom Alexander, Kelly Deann Wilson, Houston, for appellant.

Joe Falco, III, Navasota, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Thoroughbred Horsemen's Association of Texas, Inc., (the "Association"), appeals a declaratory judgment granted in favor of J. Eddie Dyer on the grounds that: (1) the trial court erred in failing to file findings of fact and conclusions of law; and (2) the Association was entitled to an auctioneer's lien against two Jockey Club registration certificates in its possession. We reverse.

The Jockey Club is the registering authority for thoroughbred horses. The Association is a horse sales company that conducts annual auctions of registered thoroughbred yearlings. When an owner nominates a horse for sale at auction by the Association, the Jockey Club registration certificates are escrowed with the Association, as auctioneer, pending the horse's sale. If a horse does not reach the minimum sale price set by the owner ("the reserve"), the horse is repurchased for the owner's account.

At the time that a horse is either sold to a new owner or repurchased for the nominating owner's account, the Association earns its auctioneer's fees and commission. When the fees are paid, the Association forwards the Jockey Club registration certificate to the new owner, or returns them to the nominating owner, as the case may be.

In 1990, Carl Sells nominated two registered thoroughbred horses for public sale, and deposited their Jockey Club registration certificates (the "certificates") with the Association. Neither horse reached its reserve, and the horses were repurchased for Sells' account. The Association charged $1,721.00 in commissions and fees.

Thereafter, the horses were placed with Dyer for boarding. Sells failed to pay Dyer for the boarding expenses, and, one year after the sale, Dyer made formal demand for payment, including a notice that the horses would be sold at public sale if the debt was not paid. Dyer advertised the sale in the local newspaper, then purchased the horses himself at the sale, which he conducted.

After purchasing the horses, Dyer requested the certificates from the Association,

which refused to deliver them. The Association claimed that it had a common law auctioneer's lien on the certificates because its commissions and fees had not been paid. When Dyer requested duplicate certificates from the Jockey Club, it refused to issue the certificates until the dispute between the Association and Dyer was resolved.

Dyer filed suit against the Association, seeking a declaratory judgment that the Association does not hold a valid lien on the certificates, and a mandatory injunction requiring the Association to deliver possession of the certificates to him. After a bench trial, the trial court entered a declaratory judgment stating that Dyer was entitled to possession of the certificates and ordering the Association to deliver them to him.

The Association timely filed a request for findings of fact and conclusions of law, and a notice that the findings of fact and conclusions of law were past due. When the trial court failed to file the requested findings and conclusions, the Association filed this appeal.

■ In its first point of error, the Association claims that the trial court's failure to file the findings of fact and conclusions of law was error. On January 26, 1995, we ordered the trial court to file findings of fact and conclusions of law, and it complied. The parties were given additional time to file supplemental briefs, but neither party did so. We find that any error caused by the trial court's failure to file the requested findings of facts and conclusions of law was remedied by the trial court's compliance with our order. *See* Tex.R.App.P. 81(a). The Association's first point of error is overruled.

Among its conclusions of law, the trial court ruled that: Dyer purchased the horses at a properly conducted sale pursuant to Section 70.003 of the Texas Property Code; Texas does not recognize a common law auctioneer's lien under the facts of this case; at common law, an auctioneer's lien is a possessory lien on property to be auctioned; if recognized in Texas, a common law auctioneer's lien would attach to the property to be auctioned, in this case, the horses, and not to the indicia of ownership, the certificates of registration; and the Association did not establish a contractual lien on the horses or the certificates of registration.

■ In its second point of error, the Association claims that, as an auctioneer, it is entitled to an enforceable common law or contractual lien against the certificates. Although not stated in terms of error committed by the trial court, we understand this point of error to challenge the trial court's conclusions of law that no common law or contractual lien was applicable to these facts, and the resulting conclusion in the judgment that Dyer was entitled to possession of the certificates, since these are the issues argued in the parties' briefs. *See* Tex.R.App.P. 74(d), 74(p); *Davis v. Grammer*, 750 S.W.2d 766, 767 (Tex.1988).

■ Although not in issue in this case, we preface our discussion of this point by noting that the "common law of England" remains the "rule of decision" in Texas except to the extent it is inconsistent with the Constitution or laws of this State. Tex.Civ.Prac. & Rem. Code Ann. § 5.001 (Vernon 1986). However, in this context, the "common law of England" was "that which was declared by the courts of the different states of the United States," rather than the common law in force in England in 1840 (when the original statute was enacted). *Grigsby v. Reib*, 105 Tex. 597, 153 S.W. 1124, 1125 (1913); *Great S. Life Ins. Co. v. City of Austin*, 112 Tex. 1, 243 S.W. 778, 780 (1922). Thus, where not otherwise provided by the Constitution or laws of Texas, the common law of the various states remains in effect here.

■ The existence, scope and application of a common law auctioneer's lien has not been addressed by Texas law. Dyer correctly acknowledges that other jurisdictions have recognized that, at common law, auctioneers have a lien on goods entrusted to them for sale and in their possession for their remuneration and charges.[1] Dyer has not cited,

---

1. *See, e.g., Harris v. Merlino*, 137 N.J.L. 717, 61 A.2d 276, 278 (N.J.Err. & App.1948); *Art Educ. Press, Inc. v. Smith*, 252 A.D. 316, 299 N.Y.S. 170, 171 (1937); *Lewis v. Mason*, 94 Mo. 551, 5 S.W. 911, 912 (1887); 94 Mo. 551, 8 S.W. 735 (1888); *Elison v. Wulff*, 26 Ill.App. 616, 619 (App.Ct.1887); *Thompson v. Kelly*, 101 Mass. 291 (1869); *Harlow v. Sparr*, 15 Mo. 184 (1851);

and we are not aware of, a jurisdiction which has adopted a contrary rule rejecting the existence of such an auctioneer's lien at common law. Nor have we been cited or found any authority that such a lien is contrary to the Constitution or other laws of Texas. Therefore, we conclude that the common law auctioneer's lien is applicable in Texas. TEX. CIV.PRAC. & REM.CODE ANN. § 5.001 (Vernon 1986).

■ However, Dyer argues that in this case, since the horses, and not the certificates, were consigned to the Association for auction, and since the certificates have no value independent of the horses, an auctioneer's lien would not apply to the certificates. We disagree.

Jockey Club registration was a requisite for the horses to be auctioned at the Association's annual auction of registered yearlings. As Dyer explains in his brief, although it is possible to own thoroughbred horses without registration papers, the horses cannot be raced in sanctioned races, nor can registration certificates be obtained for their offspring. Thus, he points out, the value of the horses in this case was substantially reduced without the certificates.

It follows from this that escrowing the certificates with the Association not only provided verification that the horses were registered, but also made it possible to auction and sell the horses as thoroughbreds with registration papers, rather than without them. In that the certificates thereby contributed importantly to the auction value of the horses, we believe that they were an integral part of the "goods" entrusted to the Association for auction, and, as such, were subject to the common law auctioneer's lien.

■ Dyer argues, however, that such a lien is not enforceable against him because he was not in privity of contract with the Association. *Gibson Land Auction Co. v. Brittain*, 182 N.C. 676, 110 S.E. 82 (1921). We disagree for two reasons. First, *Gibson Land* is not instructive on this issue because it involved an auction of real property to

which an auctioneer's possessory lien does not attach, because no lien was asserted in that case, and because the opinion merely held that the auctioneer could not recover his commission from a successful bidder who refused to perform and was released by the seller. *Id.* 110 S.E. at 82–84.

Second, and more importantly, Dyer's contention that the lien is not enforceable *against him* assumes that he has some right of possession to the certificates. However, the facts are clear that only the horses, and not the certificates, were placed with him. Moreover, under the Property Code, the lien for the amount of his charges was on the animals left with him for care. TEX.PROP. CODE ANN. § 70.003 (Vernon 1995). Therefore, the only property which he was entitled to sell in satisfaction of that lien, or to buy at the resulting public sale, was the horses. *See, e.g., First S. Properties, Inc. v. Vallone*, 533 S.W.2d 339, 341 (Tex.1976) (purchaser at foreclosure sale obtains only such title as trustee had authority to convey). The fact that the certificates may have no use apart from the horses, or that the registration may effectively be lost if the certificates are not redeemed, does not create a legal entitlement to their transfer. If, for example, it had been Sells who boarded the horses with Dyer, we believe that Dyer would have had no right to claim possession of the certificates from Sells. The result is no different because the Association happened to be an intermediate party.

Having found the existence and applicability of a common law lien, we do not reach the Association's contention that the certificates were also subject to a contractual lien. We sustain the Association's second point of error, reverse the trial court's judgment, and render judgment that Dyer take nothing in this action.

*Blum v. Torre*, 21 S.C.L. (3 Hill) 155 (1836); 7 Am.Jur.2d *Auctions and Auctioneers* § 62 (1980);

7 C.J.S. *Auctions and Auctioneers* § 21 (1980).