FLORENCE G. COLLINS, complainant and respondent,

*v.*

EDWIN A. S. LEWIS, defendant and appellant.

[Filed June 18th, 1900.]

The assignment in question held to be a declaration of trust which became operative from the time of its execution.

---

On appeal from a decree advised by Vice-Chancellor Stevens, who delivered the following opinion:

On July 5th, 1883, the complainant, Florence G. Collins, was married to Walter S. Collins. She was then possessed of property consisting of bonds and other securities held for her by her mother, Mrs. Gaston. On March 7th, 1884, Mrs. Gaston handed to Walter S. Collins securities to the amount of $16,600 and took from him an acknowledgment that he received them for his wife. Among them were seven bonds of the Chicago, Milwaukee and St. Paul Railroad Company, six of which, on March 7th, 1888, he deposited with the First National Bank of Staten Island, to secure his note for $5,500. On March 13th, 1889, he borrowed an additional sum from the same bank, gave a new note for $6,500, and deposited the remaining bond as further security therefor. He continued to pay interest on the loan up to the time of his death, which occurred on December 5th, 1893.

On March 14th, 1889—that is, one day after he had pledged the last bond—he executed a paper, in form, an assignment of certain stocks which he then owned, in the presence of John W. Loveland, his wife's cousin. This assignment, after stating that in consideration of the loan to him by his wife, Florence, of the

Collins *v.* Lewis.

bonds in question (a statement not true in point of fact), which bonds he had pledged as security for his note, proceeds as follows:

"I hereby assign and set over to the said Florence G. Collins, her heirs and assigns, the following property now standing in my name, to secure her from loss in case said bonds should be forfeited by the non-payment of my said note, as therein provided, viz. [mentioning certain stocks of industrial companies], the certificates for same being hereto attached, and I authorize the proper persons to make the transfer of said shares on the happening of the contingency herein stated. Witness my hand and seal this 14th day of March, A. D. 1889.

"Witness: JOHN W. LOVELAND.          W. S. COLLINS.   [Seal.]"

This paper was found at his death in a tin box, in which were contained securities, some of which belonged to Mr. Collins, and some of which belonged to his wife. It was not in the condition in which it was when executed. Collins had, between the time of its execution and the time of his death, drawn lines through the names and amounts of some of the stock specified, and written in, in red ink, the names and amounts of others. On the left-hand side of the paper he had written as follows: "Amended in red ink, 22 Sept. |92   W. S. C." The par value of the stocks in the paper as amended was $10,600. Mr. Loveland, who took the paper out of the tin box a few days after his death, thinks that the stocks enumerated in it, as it then stood, were, with a single exception, attached to it. Collins' estate is insolvent, and the question is whether the above paper has legal force, either as an assignment or as a declaration of trust. I have come to the conclusion, after some hesitation, that it is capable of being sustained as a declaration of trust.

The question of what amounts to such a declaration has been recently before the court of appeals in *Janes* v. *Falk, 5 Dick. Ch. Rep. 468.* It was said in that case that it is not essential that the memorandum relied upon should have been delivered to anyone as a declaration of trust or that the *cestui que trust* should have been informed of the trust. It has often been held in other cases that it is not necessary that the word "trust" should be used by the declarant. Such being the law, it seems to me that there is enough here to show that Collins declared a

trust at the time the paper was first executed. What he did was this: He, in terms, assigned and set over, using words *de praesenti,* certain stock standing in his name. This, assuming that the paper took effect immediately, vested in his wife, not a legal title, but only an equitable interest. Passing by the objection that he could not directly convey to his wife, numerous cases show that the legal title to shares of capital stock does not pass by formal assignment merely. The legal title, therefore, in any event, remained in Collins himself. But did Collins so intend? If he did, then we have what amounts to a declaration of trust —that is, a declaration showing that the declarant holds the legal title to the benefit of another person to whom he thereby transfers the equitable interest; and the case is distinguishable from such precedents as *Milroy* v. *Lord, 4 De G., F. & J. 264,* and *Richards* v. *Delbridge, L. R. 8 Eq. 12.*

I think Collins did so intend, for in the paper itself he further provides that the proper persons are to make the transfer "on the happening of the contingency herein stated." This contingency is the forfeiture of the bonds by non-payment of the note. So he is to hold the legal title until such forfeiture. As the forfeiture did not occur in his lifetime, he, up to the time of his death, held the legal title in strict accordance with the terms of the instrument.

If, however, complainant's case rested on the paper alone, I should doubt very much whether it would be maintainable for another reason. There would be an entire failure of proof that he intended the paper to become operative. It would be a dangerous thing to give effect to a deed or other instrument found in the possession of the man who had signed and sealed it or had even acknowledged it before a commissioner, without proof of delivery or of something equivalent to delivery. The evidence of Loveland appears to supply the needed proof. He says that at the time he witnessed the paper, Collins said to him: "I am about to use some securities of Mrs. Collins' for the purpose of obtaining money, and in order to save her from possible loss in case of forfeiture for non-payment I am here setting over to her certain securities of her own and I wish you to witness this paper as a pledge of those securities." The securities were

at the time, according to Loveland's recollection, attached to the paper. This evidence shows that Collins intended the declaration to be operative from the time of its execution. The following cases are illustrations of how this subject has been dealt with under a somewhat similar state of facts: *Ex parte Pye, 18 Ves. 140, 150; Richardson* v. *Richardson, L. R. 3 Eq. 686; Morgan* v. *Malleson, L. R. 10 Eq. 475; Baddely* v. *Baddely, 9 Ch. D. 114; Fox* v. *Hawks, 13 Ch. D. 822; In re Smith's Estate, 144 Pa. St. 428.*

The question then arises, how far is this declaration now operative? Some, but not all of the stock, was taken from the trust, and other stock substituted in its place. I think the trust attaches to the substituted stock. As the paper was to become immediately operative in the first instance, we may reasonably accept as true Collins' written declaration, made subsequently, that he intended to "amend" it only—not to nullify it—by substituting other stocks for those taken. If he intended it to become operative in the first instance, it may be safely presumed that he likewise intended it to continue operative as changed, and this presumption will be the more readily made as we are dealing with a transaction based on valuable consideration and not with a case of gift.

It is contended that the whole estate is liable to make good any loss complainant may suffer, if the collateral should prove to be insufficient, before it can be applied to pay the claims of general creditors. There is nothing to show that the money which Collins obtained from the discount of his notes went into his estate, or that it now, in a changed form, constitutes part of the estate. He may have paid his debts with it, lost it or used it to maintain his family. No attempt was made to trace the money into the property of the deceased. Under these circumstances the complainant has no prior right to payment. *Matter of Cavin* v. *Gleason, 105 N. Y. 263.*

*Mr. William R. Barricklo,* for the appellant.

*Mr. Washington B. Williams,* for the respondent.

Collins *v.* Lewis.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons given by Vice-Chancellor Stevens in his opinion in the court below.

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, VAN SYCKEL, GARRISON, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES—12.

*For reversal*—None.