AMOS HOWARD HARRIS, TRADING AS HARRIS SALES COMPANY, PLAINTIFF-RESPONDENT, v. FRANK MERLINO, DEFENDANT-APPELLANT.

Argued May 19, 1948—Decided September 3, 1948.

For the defendant-appellant, *Frank M. Lario.*

For the plaintiff-respondent, *Thomas G. Hilliard.*

The opinion of the court was delivered by

OLIPHANT, CHANCELLOR. This is an appeal from a judgment entered on a verdict of the trial court in favor of the plaintiff-respondent, and against the defendant-appellant after a trial without a jury.

The complaint consisted of two counts, the first based on an account stated and the second "for the price of goods sold and delivered to the defendant upon a book account." The answer and separate defenses amount to a general denial except the sixth separate defense which alleges that the defendant was the highest bidder for certain goods at an auction sale, the terms of which were cash payable at the time of sale. After the goods were struck off the defendant was unable to make payment and the plaintiff agreed to rescind the sale and no delivery of goods was ever made. The plaintiff's reply denied the allegations of this defense.

The dispute had its inception in the sale of various lots of cattle to the appellant at a cattle auction conducted by the respondent at his place of business. In the early morning following the sale, respondent's premises burned with the loss of buildings and cattle, including those struck off to the appellant.

Since an auctioneer has the right to receive and is responsible to his principal for the price of the property sold and has a lien for his commission, he has a special property and interest in the proceeds sufficient to maintain an action in his own name for the purchase price thereof. · 6 *C. J.* 841, § 55.

On October 1st, 1946, the appellant bid on ten different lots of cattle which were knocked down to him as the highest bidder in each instance and a notation to that effect was entered on the sales sheet by the auctioneer's clerk as was the

usual practice. These sheets showed an aggregate liability of the appellant for purchases made at the October 1st sale of $817.20.

There is testimony that the terms of such sales were cash unless arrangements were made for credit. The appellant admits the sales were on a cash basis, that he never had credit and that no delivery of the cattle would be made until the prices bid were paid in cash.

The appellant testified that at the close of the sale he told the managing clerk that he had come without his pocketbook and that he had no money and that the clerk said he was sorry but they had to require a down payment and the balance on delivery or they would sell the cattle over again at the next sale. The clerk denied this alleged conversation and further stated he had no conversation whatever with the appellant on the day of the October 1st sale and that his first discussion with the appellant was on October 15th, 1946.

The clerk testified that on October 15th, 1946, when the appellant came into his office he told him that he owed the auction company the $817.20 and he presented the bill to the appellant and asked for payment of it, but the appellant said he had just purchased some cattle which he was going to pay for and asked if he paid $50 on the account in suit and a portion each week would it be all right and that $50 was paid that day as a first payment and credited on the bill. The plaintiff testified the appellant on the same day spoke to him and said he was a poor boy, his cattle were burned up and he didn't have the money to pay. The plaintiff stated he had ordered his clerks to accept any payment on account from those who lost cattle in the fire.

Appellant admitted making the $50 payment but said he gave it as a donation to help the auction company out because he understood they had incurred a heavy loss, not all covered by insurance. He did not dispute the amount of the money due or that he had bid in the lots of cattle at the prices listed but denied getting a bill. His position below and here is that title had not passed to him at the fall of the auctioneer's hammer and therefore the cattle were held on the premises at the seller's risk.

The learned trial judge found as a fact the appellant's story that he made a donation "is rather inconceivable to me" and that the appellant admitted the purchase of the livestock. He held as a matter of law that under the Sales Act the sale was complete upon the fall of the auctioneer's hammer and then title to the property transferred to the appellant buyer who had the right to take his cattle home upon paying the amount of his bill, but that at his own risk he had permitted them to remain in the possession of the respondent.

The first point of appellant is that the proofs do not support an action for an account stated. The argument is made that an account stated must be based on prior dealings between the parties resulting in a subsisting debt and cannot be made to create a liability where none previously existed, that such action rests upon mutual agreement of the parties as to the correctness of the account and may be established by formal assent or by circumstances from which such assent may be implied. It is asserted that the appellant never admitted the correctness of the account.

Where a cause is tried by the court without a jury the findings of fact will not be reviewed by this court on appeal, all that can be reviewed is the sufficiency of the facts *so found* to support the judgment. *Dimock* v. *United States National Bank,* 55 *N. J. L.* 296; *Peter* v. *Peter,* 114 *Id.* 193, 194.

The court below found as a fact that the appellant admitted the correctness of the amounts charged to him for the items purchased at the sale and that the $50 payment was made as a payment on account.

It is not essential that an account stated be in any particular form. Any evidence indicating an admission by the debtor to the creditor of a stated indebtedness claimed by the latter will furnish ground for implying a promise to pay. Evidence of assent to an account stated may consist of express statements or inferences from conduct. 6 *Williston on Contracts,* § 1863.

The promise to pay may be express or implied. The comparison of accounts and the settling upon the balance is an implied promise, on the part of him against whom it is found, that he will pay it. When a payment is made, the balance

may amount to an account stated. *Weigel* v. *Hartman Steel Co.*, 51 *N. J. L.* 446 (at *pp.* 452, 453); 1 *Chitty Pleading* *358; 6 *Williston on Contracts*, §§ 1862, *et seq.*

The second point of the appellant is that there was no legal liability or obligation to support the alleged account stated. The argument made is that the auction sale was subject to a condition, the payment of cash for the articles bought, and that title did not pass until compliance with the condition. This being so he contends under *R. S.* 46:30–14, the risk not having passed to the buyer and the cattle having been destroyed, the con__act was avoided.

Both under the common law and the statute, a sale by auction is complete when the auctioneer announces its completion by the fall of the hammer or in any other customary manner. 1 *Benjamin on Sales* 46; 1 *Williston on Sales* 683; 6 *C. J.* 829, 835, and *R. S.* 48:30–27.

Not only is the contract complete when the hammer falls, but the property in the goods passes then, unless some term or condition of the bargain makes it impossible that it should do so. The condition that the sale is for cash is, however, not such a condition as will prevent the immediate transfer of the property, since this condition may be satisfied by construing it as meaning that possession shall not be delivered until payment. Such a condition is implied in every sale by auction, as well as in other sales, unless there is an agreement as to credit. 1 *Williston on Sales* 684; 2 *Benjamin on Sales* 698.

Where, as here, a bargain is made for the purchase of goods and nothing is said about payment or delivery, the property passes immediately, so as to cast upon the purchaser all future risk, if nothing remains to be done to the goods, although he cannot take them away without paying the price. 1 *Benjamin on Sales* 266.

The question is primarily one of intention and under all the facts presented below we concur in the conclusion of the trial court that title to the property transferred to the buyer on the falling of the hammer of the auctioneer and "his continued possession was at buyer's risk." Further, when the sale is completed by the falling of the hammer the auctioneer

becomes the agent of the purchaser. 1 *Benjamin on Sales* 236.

For these reasons it is obvious that *R. S.* 46:30–14 is not applicable, since that section relates to situations before the risk passes to the buyer.

From the facts presented below and the reasonable inferences deducible therefrom, it must be concluded, under the principles above stated applicable to auction sales, that a legal obligation of payment due to the respondent from the appellant was created and that there was a valid subsisting debt resulting from the prior dealings between the parties when the account was stated. 1 *C. J.* 699.

There was evidence below to sustain the various findings of fact of the trial court and the findings so made are sufficient under the stated rules of pleading and proof to sustain an action for an account stated.

We have examined the other points urged and find them to be without merit.

The judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, JACOBS, WELLS, DILL, FREUND, MCLEAN, SCHETTINO, JJ. 15.

*For reversal*—None.