**Linda McMAKIN, Trustee, Appellant,**

v.

**PINE BUSH EQUIPMENT CO., INC., Appellee.**

**In re Nevins Brothers Auction Co., Inc., Debtor.**

**CIV.A. No. 99–584.**
**Bankruptcy No. 97–18658 (GMB).**

United States District Court,
D. New Jersey.

Dec. 29, 1999.

actually commence enforcement proceedings

for the lien to be summarily enforceable. *Id.*

Gary C. Zeitz, Zeitz & Stein, L.L.C., Westmont, NJ, for Linda McMackin, Trustee.

Richard S. Baum, Baum & Baum, Monticello, N.Y., for Pine Bush Equipment Co., Inc.

Larry Lesnick, Ravin, Greenberg & Marks, Roseland, NJ, for Nevins Brothers Auction Co., Inc.

## OPINION

ORLOFSKY, District Judge.

Linda McMackin ("Trustee"), Trustee of the bankruptcy estate of Nevins Brothers Auction Co., Inc. ("Debtor"), appeals from the judgment entered by Bankruptcy Judge Gloria M. Burns in the United States Bankruptcy Court for the District of New Jersey ordering the Trustee to turn over the sum of $34,871.66 to Pine Bush Equipment Co., Inc. ("Pine Bush"), free and clear of all liens and equitable and legal interests. *See In re Nevins Bros. Auction Co., Inc.*, No. 97–18658 (Bankr.D.N.J. filed Jan. 5, 1999). On appeal, the Trustee contends that the Bankruptcy Court erred in determining that the $34,871.66 was held by the Debtor in a resulting trust for the benefit of Pine

Bush. The issue presented on appeal, one of first impression in this Circuit, is whether, following an auction sale, the auctioneer remains an agent who is liable to his principal for the proceeds of the sale, or, conversely, becomes a debtor, who is indebted to the former principal for the amount of the proceeds of the sale, minus a commission. Because this inquiry is intensely fact-specific and dependent upon the facts and circumstances surrounding the agreement and the intent of the parties and because I find the factual record before the Bankruptcy Court to be insufficiently developed, I shall vacate the Bankruptcy Court's Order of January 5, 1999, and remand this case to the Bankruptcy Court with instructions to make the requisite findings of fact in accordance with the legal principles described below.

## I. BACKGROUND

The parties allege that the Debtor, an auctioneer of construction equipment, en-tered into an oral contract with Pine Bush for the sale of three items of heavy equipment at a public auction. *See* Trustee Designation of the Record ("DOR") doc. 107 (Phil Stanbro, Pine Bush Credit Manager, Cert.) at ¶ 4; DOR doc. 140 (attached Nevins Dep.) at 74. Although the issue was not discussed by the Bankruptcy Court, the terms of the alleged contract are disputed. Specifically, Pine Bush alleges that the Debtor was to hold the proceeds of the equipment in escrow, *see* Stanbro Cert. at ¶ 4, while Joseph Nevins, President of the Debtor, testified in his deposition that the arrangements with Pine Bush, which was a regular customer of the Debtor, varied and "went back and forth." *See* Nevins Dep. at 74.[1]

The parties allege that on July 26, 1997, buyer Tony DePaul & Sons successfully bid on two pieces of Pine Bush equipment, the price of which is disputed,[2] and equip-

---

1. For example, although it is not clear that Nevins was referencing the oral agreement at issue, his testimony included the following:

 Q(Trustee's attorney Mr. Zeitz): Okay. What were the general terms of your deal with Pine Bush?
 A(Nevins): They've changed. They went back and forth. I mean there was [sic] times we bought equipment from them, there was [sic] times that we sold equipment for them. There was [sic] things that went back and forth. Depends on who was in charge up there at the given time.
 Q: Can you explain what happened when you bought equipment from Pine Bush?
 A: We didn't really buy it per se. What happened was there was [sic] large packages that we would guarantee minimums on, and Pine Bush would bring that equipment. And the deal we had with Pine Bush was that no matter what the minimum was that's what we would get. So if we guaranteed them $750,000, and the sale only brought $500,000, we'd write them a check for 750 and they'd give us another 250 in equipment. So it was almost a horse trading back and forth.
 Q: So, in other words, if the equipment only sold for $500,000 and you had to give them 750, they would owe you 250?
 A: Yeah.
 Q: And then when you got the other $250,000 worth of equipment what would you do with that?

 A: We'd sell it and keep the money.
 Q: How many times did you do that kind of deal?
 A: A lot.
 Q: So did you ever pay Pine Bush in advance prior to a sale?
 A: Yup.
 Q: Okay. How often did you do that?
 A: Couple times.
 Q: Do you know when?
 A: I mean it wouldn't be an abnormal practice with Pine Bush.
 Q: How large an amount of money would you have—
 A: $750,000 was the biggest deal we ever did and paid them in advance for it.... It was not always a bad business. There was [sic] times where there was $750,000 of company money sitting around.
 Q: So that would be operating profits?
 A: Yup.
 Q: And it wouldn't be money that was from another auction?
 A: Nope.
 Nevins Dep. at 74–76.

2. The Trustee alleges that the Pine Bush equipment was sold at the public auction for a total purchase price of $37,500.00, *see* Appellant Br. at 4, while Pine Bush alleges that the total purchase price was $55,500.00. *See* Appellee Br. at 3.

ment by another customer of the Debtor, Phillips Construction. *See* Appellant Br. at 4; Appellee Br. at 3. It is alleged that the unsold third piece of equipment was returned to Pine Bush. *See* Appellee Br. at 3.

Pine Bush contends that a few months after the auction, the Debtor tendered to Pine Bush a check from its escrow account for the proceeds of the July 26, 1997 sale of the equipment but that on September 23, 1997, the check was dishonored for insufficient funds. *See* Appellee Br. at 3. Shortly thereafter, on September 26, 1997, the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code.[3] *See* DOR doc. 1 at 1. The Trustee alleges that four days later, on September 30, 1997, the Debtor deposited into its escrow account a check from Tony DePaul & Sons in the amount of $54,590.00, $37,-500.00 of which was payment for the July 26, 1997, purchase of the Pine Bush Equipment, with the remainder due Phillips Construction. *See* Appellant Br. at 5. The Trustee submits that this check was commingled with other auction proceeds in the escrow account, which was used to pay the Debtor's employees and others. *See* Appellant Br. at 5 n. 1. It is further alleged that this was the last deposit in the Debtor's escrow account; the funds were thereafter transferred to a debtor-in-possession account at another financial institution during the Debtor's Chapter 11 proceeding. *See id.*

According to the Bankruptcy Court docket, over the course of the ensuing months, a slew of creditors filed motions for turnover of the funds deposited in the debtor-in-possession account. Relevant to this appeal are the motions made by the Trustee and Pine Bush, each alleging entitlement to the funds. Before Bankruptcy Judge Burns, Pine Bush argued that since the oral agreement between the parties required the Debtor to hold the proceeds of the auction sale in trust for Pine Bush and since the funds were clearly identifiable as the last deposit made, a constructive trust arose, thereby entitling Pine Bush to $37,500.00, less commission, or a total of $34,871.66. On the other hand, the Trustee argued that because there was no agreement that the funds would be held in trust for Pine Bush, there was a commingling of funds, and the Debtor used the escrow account for personal business use and not solely for auction proceeds, following the sale of the Pine Bush equipment, a debtor-creditor relationship arose and therefore the $37,500.00 is part of the bankruptcy estate.

Judge Burns held two hearings to determine the entitlement to the funds, each time reserving her decision until a later date.[4] At a third hearing, on July 27, 1998, however, Judge Burns stated that "I had already ruled that I thought that the resulting trust had resulted from the facts and circumstances of this case which set up a trust in which Pine Bush was entitled to the funds in the account." *See* Hearing

---

**3.** According to the Bankruptcy docket, on November 14, 1997, the Debtor's Chapter 11 petition was converted to one pursuant to Chapter 7 of the United States Bankruptcy Code. *See* Bankruptcy Docket, at entry 30.

**4.** At each hearing, Judge Burns explicitly stated that she was reserving her decision. On April 27, she stated:

I want to look at the law further to see if I agree with [the Trustee] ... I mean, it totally changes everything if there's no longer a consignee/consignor relationship. I don't know if that's true or not. That's what his argument is. I want to look at that issue first. If I decide that in favor of him, it's

going to be different than if I decide that there's still a consignment relation - - -....

Hearing Tr. at 26 (April 27, 1998). Furthermore, on July 13, 1998, Judge Burns stated:

I don't know, I'm not going to decide it today because I want to look at the case law again and I'm going to write an opinion with regard to my decision.... I am going to reserve my decision on the Pine Bush portion of the case and I am going to try to issue a written opinion. If not, I'll do it orally on July ... 27th.

Hearing Tr. at 21, 29–30 (July 13, 1998). Judge Burns did not issue an opinion in this case.

Tr. at 3 (July 27, 1998). A review of the transcripts of the prior two hearings, however, reveals no such ruling.[5]

On July 27, 1998, Judge Burns stated that she "wanted to consider that debtor/creditor argument that was made" and then stated that "I still don't see anything different than what I ruled before. So Pine Bush is entitled, to the extent the funds are there, from that last check that went in, they're entitled to those monies, as they're not property of the estate, they're in trust for them." Hearing Tr. at 4–5 (July 27, 1998). Judge Burns memorialized her conclusions in a January 5, 1999 Order which provided that:

> WHEREAS, Linda L. McMackin, Bankruptcy Trustee, is in possession of $37,-500.00 proceeds of the sale of equipment owned by Pine Bush Equipment Co., Inc.,
>
> WHEREAS, the sum of $37,500.00, less auctioneer's commission of $2,628.34, for a total of $34,871.66, is held by Linda L. McMackin, Bankruptcy Trustee, in a resulting trust for the benefit of Pine Bush Equipment Co., Inc.,
>
> WHEREAS, the Trustee is entitled to retain auctioneer's commission in the amount of $2,628.34, it is
>
> On this 5th day of January, 1999, ORDERED that Linda L. McMackin, Bankruptcy Trustee, shall pay over the sum of $34,871.66 to Pine Bush Equipment Co., Inc., free and clear of all liens and equitable and legal interests.

Order at 1–2 (filed Jan. 5, 1999).

On February 8, 1999, the Trustee filed a notice of appeal in this Court from the Bankruptcy Court Order of January 5, 1999. On appeal, the Trustee contends that the Bankruptcy Court: (1) erred as a matter of law in imposing a resulting trust in favor of Pine Bush; (2) erred as a matter of law in finding that Pine Bush was not a mere general unsecured creditor; (3) made clearly erroneous findings of fact in determining that the bankruptcy estate would be unjustly enriched, guilty of fraud or that other circumstances exist which justified the imposition of the resulting trust; and (4) made clearly erroneous findings of fact that Pine Bush was not a general unsecured creditor. *See* Appellant Br. at 1.

## II. DISCUSSION

■ This Court has jurisdiction to hear appeals from final orders of bankruptcy courts pursuant to 28 U.S.C.A. § 158(a)(1) (West Supp.1999).[6] In reviewing the orders of the Bankruptcy Court, findings of fact are reviewed under a "clearly erroneous" standard, and conclusions of law are reviewed de novo. *See* Fed. R. Bankr.P. Rule 8013; *In re Cohen*, 106 F.3d 52, 55 n. 1 (3d Cir.), *cert. granted*, 521 U.S. 1152, 118 S.Ct. 30, 138 L.Ed.2d 1060, *aff'd*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998); *Family Kingdom, Inc. v. EMIF New Jersey Ltd. Partnership*, 225 B.R. 65, 69 (D.N.J.1998)(Orlofsky, J.).

■ In concluding that the monies were held in a resulting trust for the benefit of Pine Bush, the Bankruptcy Court ruled, in essence, that the monies were not

---

**5.** Throughout her examination of counsel at the July 13, 1998 hearing, Judge Burns did make casual comments such as "the contract didn't require the debtor to escrow the money," that "[a]ll the debtor was was an agent with the authority to contract the sale," and that "there's nothing that I saw in any contract or any auctioneer's situation that I am ever aware of where the auctioneer gets title to the proceeds after a sale." *See* Hearing Tr. at 6–8 (July 13, 1998). Considering the informality with which Judge Burns made these statements and the fact that at the hearing of July 13, 1998, she explicitly stated that she

was reserving her decision until a later date, this Court does not view these statements as findings of fact.

**6.** 28 U.S.C.A. § 158(a) (West Supp.1999) provides, in relevant part, that, "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." *Id.* at § 158(a)(1).

property of the Debtor's estate. *See generally,* 11 U.S.C. § 541(a)(1) (providing that property of the estate includes "wherever located and by whomever held[,] ... all legal or equitable interests of the debtor in property as of the commencement of the case"). Accordingly, on appeal, this Court must determine whether or not the proceeds of the sale of the Pine Bush equipment were property of the Debtor's estate, pursuant to 11 U.S.C. § 541. Central to the resolution of this statutory issue is the question whether, after the auction sale, the Debtor and Pine Bush continued to have an agent-principal relationship, or were transformed at the moment of the auction sale into a relationship of debtor-creditor. "As a general rule, if property is in the debtor's hands as agent, the property or proceeds are not treated as property of the debtor's estate," *see In re Rine & Rine Auctioneers, Inc.,* 74 F.3d 854, 857 (8th Cir.1996), and "absent state statutory enactment to the contrary, if property was in the debtor's hands as ... agent, the debtor's estate holds only the same interest, and the ... principal could recover the property or its proceeds." 5 Collier on Bankruptcy, ¶ 541.06[1][b], at 541–26 (15th ed. rev.1999); *see also In re The Guild and Gallery Plus, Inc.,* 72 F.3d 1171, 1179 (3d Cir.1996). Accordingly, this Court must determine whether, under New Jersey law, an agency relationship existed between the Debtor and Pine Bush following the auction sale.

By way of example, the two courts that have analyzed state agency law in the auction context have arrived at different conclusions. First, in *Dolph Clothiers, Inc. v. Salomon (In re Martin Fein & Co.),* 34 B.R. 333 (Bankr.S.D.N.Y.1983)("*Fein I*") and its progeny, *Varon v. Salomon (In re Martin Fein & Co.),* 43 B.R. 623 (Bankr. S.D.N.Y.1984)("*Fein II*"), the Bankruptcy Court held that, under New York law, an

auctioneer acted as an agent for its customers at all relevant times and therefore, the proceeds of a sale clearly segregated and identified for an auction customer in envelopes marked with the customer's name were held in constructive trust and were not part of the bankruptcy estate. *See Fein I,* 34 B.R. at 337; *Fein II,* 43 B.R. at 628. The Bankruptcy Court found that under New York law, an auctioneer is an agent of the seller, is under a duty to turn over the proceeds of a sale to the principal and to account for them in full, and the auctioneer does not have title to the principal's goods. Accordingly, the Bankruptcy Court found that the auctioneer accepted the proceeds from the sale of the principal's property as the principal's agent and held them in trust. Because the proceeds of the specific auction sale were traceable, the Bankruptcy Court imposed a constructive trust, thereby granting the principal entitlement to the funds. *See Fein I,* 34 B.R. 333 (quoting *Elliott v. Bumb,* 356 F.2d 749, 754 (9th Cir. 1966)("even had there been no written agreement, the relationship of [the parties] as principal and agent would seem to have required the impressing of a constructive trust upon funds received by the agent from the sale of his principal's property and retained by the agent in segregated identity")).

Conversely, in *In re Rine & Rine Auctioneers, Inc.,* 74 F.3d 854 (8th Cir.1996), the Eighth Circuit applied Nebraska agency law and held that the debtor-auctioneer was not acting as the auction customer's agent at the time the auction proceeds were deposited into the debtor-auctioneer's account; rather, the auctioneer was more appropriately construed as a debtor to the customer-creditor. *See id.* at 859–60. Applying the six-factor test under Nebraska law for determining whether an agency relationship exists,[7] the *Rine* Court found

---

**7.** According to the *Rine Court,* the following factors are to be considered in determining whether, under Nebraska law, an agency relationship exists: (1) the extent of control the

alleged principal exercises over the details of the alleged agent's work; (2) whether the work is done with or without the supervision of the alleged principal; (3) whether payment

that at the time the auction proceeds were delivered to the auctioneer, the auctioneer was engaging in a distinct occupation, was unsupervised and independent of the customer, and was not paid on an hourly rate. *See id.* at 859. The Court further found that because the debtor-auctioneer deposited the proceeds in its general bank account and intermingled them with other funds thereby subjecting the funds to the claims of the debtor's creditors, the debtor-auctioneer was not acting as an agent at the time of the collection of the proceeds under Nebraska law. *See id.* at 859–60. Accordingly, the *Rine* Court found that the auctioneer and customer were in a debtor-creditor relationship instead of one of agent and principal. *See id.*

■ Under New Jersey law, the relationship between an auctioneer and a seller of goods is one of agent and principal. *See e.g., Jones v. Hackensack Auto Wreckers, Inc.,* 124 N.J.L. 289, 291, 293, 11 A.2d 595 (N.J.1940)(analyzing auctioneer's express and implied authority at auction sale); *Quinzel v. Schmidt,* 55 N.J.Eq. 792, 794, 38 A. 665 (N.J.1897)(holding that auctioneer agent cannot bind parties to a sale after his authority has been revoked); *J.B. & S. Realty Corp. v. William Kennelly, Inc.,* 109 N.J.Eq. 337, 337, 157 A. 849 (N.J.Ch.1932)(holding that auctioneer must act within the confines of his agency); *Jacob v. McDuell,* 99 N.J.Eq. 652, 656, 134 A. 191 (N.J.Ch.1926)(holding that principal revoked auctioneer agent's authority prior to the auction sale); *see also In re Victory Corrugated Container Corp. of New Jersey,* 183 B.R. 373, 376–77 (Bankr.D.N.J.1995)(applying New Jersey agency law to auctioneer). It is well established in New Jersey that, "[a]n agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing

the acts of the agent." *Kernan v. One Washington Park Urban Renewal Assoc.,* 154 N.J. 437, 453, 713 A.2d 411 (1998)(quoting *Sears Mortgage Corp. v. Rose,* 134 N.J. 326, 337, 634 A.2d 74 (1993)). Furthermore, "[a] necessary element of any agency relationship is the right of the principal to control the conduct of the agent." *Id.* (quoting *Arcell v. Ashland Chem. Co.,* 152 N.J.Super. 471, 494, 378 A.2d 53 (Law Div.1977)). Although there is a dearth of case law on the disposition of proceeds submitted to an agent for a principal, it is true that "an auctioneer ... is responsible to his principal for the price of the property sold...." *Harris v. Merlino,* 137 N.J.L. 717, 718, 61 A.2d 276 (N.J.1948); *cf. Miniature Vehicle Leasing Corp. v. United States,* 266 F.Supp. 697, 701 (D.N.J.1967)(Shaw, J.)(defining a contract of consignment, where agent has the "duty to account to [his principal] for the proceeds of any such sale").

■ This Court is persuaded by the reasoning of the United States Bankruptcy Court for the Southern District of New York that, absent an intent to the contrary, a trust or fiduciary relationship is created as a matter of law thereby making an auctioneer an agent of the seller at the time of the collection of the proceeds of the auction sale. *See Fein I,* 34 B.R. at 336; *see also Marchitto v. Central R. Co. of New Jersey,* 9 N.J. 456, 466, 88 A.2d 851 (1952)(holding that agent stands in fiduciary relationship to principal) *overruled on other grounds by Donnelly v. United Fruit Co.,* 40 N.J. 61, 190 A.2d 825 (1963). A finding to the contrary, that an agent obtains title to a principal's proceeds, would be unjust. As a mere agent of his principal, an auctioneer never obtains title to the principal's property. Thus, as a policy

---

is by the hour or by the job; (4) whether the work performed by the alleged agent is part of the regular business of the alleged principals; (5) whether the alleged principals is in the type of business performed by the alleged agent; and (6) whether the alleged agent is

engaged in a distinct occupation or business. *See In re Rine & Rine Auctioneers, Inc.,* 74 F.3d 854, 859 (8th Cir.1996)(citing *Wright & Souza, Inc. v. DM Properties,* 1 Neb.App. 822, 510 N.W.2d 413 (1993)).

278

matter, it would be inequitable to establish a rule of law that would, in essence, give the auctioneer title to the proceeds thereby bringing those funds within the scope of the bankruptcy estate.[8] Accordingly, this Court holds as a matter of law that, in the absence of evidence to the contrary, an auctioneer, who is acting with the authority of an agent at the time he collects the proceeds of an auction sale, holds the proceeds of the sale of his principal's property in trust for the principal.

This holding is consistent with the view reflected in the Restatement (Second) of Trusts that a person who, as an agent, receives money for his principal is an agent-trustee, and is not a debtor to the principal, unless the principal manifested an intention that the agent should be entitled to use the money as his own. *See* Restatement (Second) Trusts, § 12, Comment h. Quite analogous to this case, the illustration to Comment h states that:

A is an auctioneer. B employs him to sell B's furniture at auction. A sells the furniture and receives the purchase money. In the absence of evidence showing a contrary intention, A is trustee for B of the money.

*Id.* at Illustration 11.

█ My holding necessarily requires that the Bankruptcy Court conduct an analysis of the agency relationship and the authority conferred upon the agent by the principal. In essence, the Bankruptcy Court must determine when, if ever, the agency was terminated. To determine the scope of the agency, the fact-finder must look to the express, as well as implied, terms of the agreement and ascertain the intent of the parties with respect to the proceeds. So, for example, if the fact-finder concludes that the parties, for all intents and purposes,[9] agreed that the proceeds of the auction were to be set aside or held for the principal, the auctioneer will most likely be found to have been acting as an agent at the time of the collection of the proceeds, thereby necessitating a finding that the proceeds were held in trust. On the other hand, if the fact-finder determines that the parties did not agree that the proceeds of the auction sale should be segregated, and their conduct conformed to that agreement, the agency will most likely be found to have come to an end at the moment of sale, thereby transforming the auctioneer from an agent into a debtor of his former principal. In sum, if the Bankruptcy Court determines that an agency relationship existed at the time of the collection of the proceeds, under New Jersey law those proceeds are to be held in trust for the principal. Conversely, if the agency relationship ended at the moment of the auction sale, the Bankruptcy Court should find that the auctioneer became indebted to his former principal for the proceeds of the auction sale.

In determining the intent of the parties, a fact-finder may be guided by the decisions in *In re Farrell & Howard*

8. It should be noted that my analysis of the title or ownership of auction proceeds is distinct from the New Jersey rule of law which permits an auctioneer to maintain an action in his own name against a purchaser of goods for the auction purchase price. In *Harris v. Merlino*, 137 N.J.L. 717, 61 A.2d 276 (N.J. 1948), the New Jersey Court of Errors and Appeals, now the New Jersey Supreme Court, held that "[s]ince an auctioneer has the right to receive and is responsible to his principal for the price of the property sold and has a lien for his commission, he has a special property and interest in the proceeds sufficient to maintain an action in his own name for the purchase price thereof." *Id.* at 718, 61 A.2d 276. Therefore, a lien on the proceeds for the auctioneer's commission is dis-

tinguishable from complete ownership of the proceeds, thereby rendering *Harris v. Merlino*, 137 N.J.L. 717, 61 A.2d 276 (N.J.1948), inapposite to this case.

9. Under New Jersey law, "the issue of trust or no trust turns almost invariably on proof of intention since the trust arises upon mere expression of the requisite intention." *See State v. United States Steel Co.*, 12 N.J. 51, 58, 95 A.2d 740 (1953)(quoting *Eagles B. & L. Ass'n v. Fiducia*, 135 N.J.Eq. 7, 37 A.2d 116 (N.J.Ch.1944)). Accordingly, "[t]o express the requisite intention it is not necessary that the word 'trust' be used." *Id.* (citing *Collins v. Lewis*, 60 N.J.Eq. 488, 46 A. 1098 (N.J. 1900)).

*Auctioneers, Inc.*, 172 B.R. 712 (Bankr.D.Mass.1994)("*Farrell*") and *In re Walker Industrial Auctioneers, Inc.*, 38 B.R. 8 (Bankr.D.Or.)("*Walker*"). In *Farrell*, in addition to finding that the contract of the parties did not require the auctioneer to segregate the proceeds or hold them in trust, the Bankruptcy Court found that the auctioneer deposited the proceeds in its general operating account, commingled them with other sales proceeds[10] and drew checks upon the account for the auctioneer's expenses and payments to other sellers. *See Farrell*, 172 B.R. at 716. Considering the totality of the circumstances, the Bankruptcy Court held that a debtor-creditor relationship, as opposed to one of a fiduciary nature, arose regarding the proceeds of the auction sale. *See id.*

Similarly, in *Walker*, the Bankruptcy Court reasoned that because the auction contracts did not prohibit the auctioneer from depositing the auction proceeds into a general account or from utilizing the monies for its own purposes but simply required the auctioneer to remit the proceeds of the sale, less charges, to the customer within twenty days after the auction, a debtor-creditor, and not an agent-principal, relationship arose. *See Walker*, 38 B.R. at 12.

In this case, Judge Burns ruled that the proceeds of the auction sale were held by the Trustee in a resulting trust for the benefit of Pine Bush. *See* Order at 1 (filed Jan. 5, 1999). While this Court finds that the imposition of a constructive trust, rather than a resulting trust, would be the correct disposition of the case if supported by appropriate findings of fact,[11] I find that in this instance Judge Burns put the

10. In this case, during oral argument before the Bankruptcy Court, great emphasis was placed upon the Debtor's commingling of funds. It should be noted that while the commingling of funds usually indicates a debtor-creditor relationship, *see* Restatement (Second) of Agency, comment c ("If the funds are properly mingled, the inference is that the agent becomes a debtor to the amount received for the principal, but that [the agent] agrees to maintain enough in the funds to pay the principal, who has a charge upon the fund to the amount of the debt"), it is not dispositive in determining whether an agent-principal or debtor-creditor relationship exists. *See* IIA A.W. Scott & W.F. Fratcher, The Law of Trusts § 179.2 (4th ed.1987) ("[p]ersons who collect money on account of others and who are under a duty to keep the funds collected for their principals and do not become merely debtors for the amounts collected, are not necessarily required to deposit the funds of each principal in a separate account, particularly where the amounts collected are small and the principals are numerous"); *see also In re Penn Central Transp. Co.*, 486 F.2d 519, 525 (3d Cir.1973)(stating that commingling of monies has minimal significance in the extraordinary operations of interline railroads); *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1060–61 (3d Cir.1993)(stating that commingling of trust funds and general revenues has little significance in natural gas pipeline operations).

11. Although "it is ... difficult to draw the line between constructive and resulting trusts," *see* V A.W. Scott & W.F. Fratcher, The Law of Trusts § 462.2 (4th ed.1989), I find that, in this case, if the facts support a finding of a trust, it should be labeled a "constructive" trust. *See In re Columbia Gas Systems, Inc.*, 997 F.2d 1039, 1059 (3d Cir.1993)(holding that natural gas pipeline company was not in a debtor-creditor relationship to customers owed refunds; rather, refunds were held in constructive trust). The legislative history of the Bankruptcy Act expressly reflects Congress's intent to exclude from the bankruptcy estate funds held in a constructive trust:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed.

*Id.* (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 368 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6324). This is consistent with the New Jersey rule that "a constructive trust [should] be impressed in any case where to fail to do so will result in an unjust enrichment." *D'Ippolito, et al. v. Castoro, et al.*, 51 N.J. 584, 588, 242 A.2d 617 (1968).

proverbial cart before the horse. The record is devoid of any clear factual findings regarding the agreement or intent of the parties upon which to base the creation of a trust. On remand, the Bankruptcy Court must look to the terms of the agreement and the intent of the parties to determine whether the agency relationship between the Debtor and Pine Bush was still intact at the time Tony DePaul & Sons delivered the check to the Debtor for the sale of the Pine Bush equipment.

 Moreover, if the Bankruptcy Court determines that the agency relationship continued for all times relevant to this appeal, it must consider whether Pine Bush has met its burden in tracing the trust funds. For example, "[i]t is well established that where a debtor holds property impressed with a valid trust, the estate will generally hold that property subject to the interest of the beneficiary." *In re Felton's Foodway, Inc.,* 49 B.R. 106, 108 (citing *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)). Nevertheless, it is equally well established that the claimant has the burden to identify the trust fund and to trace the fund where it has been commingled with funds of the debtor. *See id.; see also In re Columbia Gas Sys., Inc.,* 997 F.2d 1039, 1063 (3d Cir.1993); *cf. In re Lehigh and New England Railway Co.,* 657 F.2d 570, 579 (3d Cir.1981)(applying tracing principles to secured creditors when the trust funds have been dissipated). In *Sonnenschein v. Reliance Ins. Co.,* 353 F.2d 935 (2d Cir.1965), the Second Circuit clearly stated the applicable rule:

> [T]o sustain a claim to trust property or to an equitable lien thereon, the claimant must depend upon his ability to identify the property in its original or substituted form in the hands of the [debtor].... The basic idea of the trust doctrine as applied in bankruptcy is a fair and reasonable identification of the property or fund so as not to harm other creditors. It is not enough, therefore, to show merely that the funds of property came into the bankrupt's hands ... the

claimant must assume the burden of ascertaining and tracing the trust property, and where it is alleged that such property has been converted into other property in the hands of the bankrupt, the claimant has the burden of tracing the trust property thereon.

*Id.* at 936–37 (quoting 4 Collier on Bankruptcy ¶ 70.25[2] at 1215–17, 1218 (14th ed.1964)).

In this case, there does not seem to be a dispute that the funds are clearly traceable. The check from Tony DePaul & Sons for the sale of the equipment from Pine Bush and Phillips Construction was the final deposit in the Debtor's escrow account before the funds were transferred to a debtor-in-possession account in another financial institution. Since the Debtor did not expend any of the said funds, the proceeds are clearly traceable to Pine Bush. Accordingly, the only issue before the Bankruptcy Court on remand is whether the proceeds of the auction sale were to be held in trust.

## III. CONCLUSION

For the reasons set forth above, I shall vacate the January 5, 1999, Order of the Bankruptcy Court and remand this case to the Bankruptcy Court for further proceedings in accordance with this Opinion.