**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2688-19

EXCLUSIVE DETAILING,
INC., f/k/a PRO CARE CAR,

     Plaintiff-Appellant,

v.

PRESTIGE AUTO GROUP, LLC,
d/b/a PRESTIGE FAMILY OF
FINE CARS, and t/a PRESTIGE
MOTORS, PRESTIGE BMW,
PRESTIGE LAND ROVER,
PRESTIGE LEXUS, PRESTIGE
LINCOLN, PRESTIGE MINI, and
PRESTIGE TOYOTA,

     Defendants-Respondents,

and

PRESTIGE MOTORS, INC., d/b/a
PRESTIGE MERCEDES BENZ,
PRESTIGE MOTORWERKS, INC.,
d/b/a PRESTIGE BMW,
PRESTIGE LAND ROVER, INC.,
PRESTIGE OF RAMSEY, INC.,
d/b/a PRESTIGE LEXUS, BERRY
MOTORS, LLC, d/b/a PRESTIGE
LINCOLN, PRESTIGE OF

MAHWAY, INC., d/b/a PRESTIGE
MINI, and PRESTIGE OF BERGEN,
INC., d/b/a PRESTIGE TOYOTA,

    Third-Party Plaintiffs,

v.

MLAR CONSULTING, INC.,

    Third-Party Defendant.

_____

        Submitted November 4, 2021 – Decided December 21, 2021

        Before Judges Hoffman, Suter, and Susswein.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5844-17.

        Faloni & Associates, LLC, attorneys for appellant (David A. Faloni, Sr., on the briefs).

        Cole Schotz, PC, attorneys for respondents (Jason R. Finkelstein, of counsel and on the brief).

PER CURIAM

    Plaintiff Exclusive Detailing, Inc., appeals the January 29, 2020, order granting summary judgment to defendants Prestige Motors, Inc., d/b/a Prestige Mercedes Benz, Prestige Motorwerks, Inc., d/b/a Prestige BMW, Prestige Land Rover, Inc., Prestige of Ramsey, Inc., d/b/a Prestige Lexus, Berry Motors, LLC, d/b/a Prestige Lincoln, Prestige of Mahwah, Inc., d/b/a Prestige Mini, and

Prestige of Bergen, Inc., d/b/a Prestige Toyota[1] (defendants), denying its cross-motion for summary judgment and dismissing its complaint with prejudice. Plaintiff also appeals the January 29, 2020 order granting defendants' cross-motion to quash a subpoena to a non-party and denying plaintiff's motion to compel compliance. For reasons that follow, we affirm the orders substantially for the reasons set forth by the trial court. We agree with the trial court that although plaintiff had ample opportunity through discovery to show it incurred pecuniary damages, it did not produce invoices that were not paid nor any other type of credible evidence that it was not paid for vehicles it actually serviced. Having failed to present such evidence, plaintiff's complaint was properly dismissed.

## I.

Pro Car Care[2] provided car washing and detailing services to defendants' dealerships under a written services agreement (Agreement) dated July 21, 2000, with a ten-year term. The Agreement included a fee schedule for vehicles that were cleaned or detailed. In 2009, Pro Car Care became known as Exclusive

---

[1] We refer to defendants as identified in their answer rather than as incorrectly identified in plaintiff's complaint.

[2] Plaintiff inverted the name of this entity in the caption.

Detailing, Inc. (plaintiff). The Agreement with defendants was amended to reflect the name change. Pro Car Care was owned and operated by Michael Agolia. He also owns plaintiff. After the ten-year term expired, plaintiff continued to provide the same services to defendants, at the same rates, from 2011 through October 2016.

Plaintiff and defendants do not agree whether there was a written contract after July 2010. Plaintiff contends there were yearly contracts from 2011 through 2016, but none of the purported contracts in the record were signed by defendants. Defendants deny there was a written contract after July 2010.

Throughout the course of its relationship with defendants, plaintiff was paid weekly based upon invoices that plaintiff prepared and submitted to defendants' accounting officers. The invoices included the vehicle's VIN number and description, the type of service performed, and the service rate consistent with the Agreement.

Defendants paid plaintiff after they reviewed the invoices. On occasion, defendants found billing errors and inaccuracies in the invoices. At other times, plaintiff's work was "sloppy," and defendants requested a recleaning of the vehicle. Payments were adjusted for these issues. Defendants would pay for the services once they were corrected.

4

In May 2016, plaintiff filed bankruptcy under Chapter Seven of the Bankruptcy Code.[3] Defendants were advised to make payments to Agolia's new company, MLAR Consulting, Inc. (MLAR).[4] The fees were the same as those in the Agreement. Defendants continued to make payments on a weekly basis.

Defendants terminated plaintiff's services in October 2016, when they restructured their business to perform the cleaning and detailing services themselves. Defendants contend plaintiff did not complain it was owed money until several months later. However, plaintiff contends defendants' payments became delinquent in 2011. Plaintiff asserts it complained "all the time" about "not getting full payments" from defendants. It claims "[m]ost of the invoices not paid were for the service repair orders and loaner vehicles[,]" and these invoices would be thrown "in the garbage."

On August 14, 2017, plaintiff filed a four-count complaint against defendants in the Law Division seeking a civil judgment. The complaint alleged

---

[3]  Plaintiff alleges the Trustee advised the Bankruptcy Court that defendants owed money to plaintiff and that its present law firm was appointed to collect these funds. However, in Agolia's deposition upon oral examination in January 2016 before the Bankruptcy Court, he said he had gone to the firm two years earlier and given it "all the paperwork back then."

[4]  Defendants allege MLAR is under the same ownership as plaintiff and provides the same services.

plaintiff "provided cleaning, washing and detailing services for [d]efendants and its affiliates in connection with multiple dealership operations during the period of July 2000 through October 2016," but defendants breached their "credit agreement" with plaintiff, resulting in damages of $19,647,030.40. Plaintiff requested entry of a judgment, costs and attorney's fees for breach of contract (Count I). Count II alleged a cause of action for promissory estoppel claiming defendants assured plaintiff it would be paid in full but breached that promise. Count III alleged defendants were unjustly enriched because of their failure to pay plaintiff. Count IV alleged defendants "fail[ed] and refuse[d] to remit payment to [plaintiff] on the account stated between the parties."

Defendants filed an answer, denying many of the allegations, and a third-party complaint for contribution against MLAR. Discovery ended on November 15, 2018, following extensions. Plaintiff alleges the parties exchanged thousands of pages of records during discovery. Depositions continued through April 15, 2019, with the consent of the trial court. In the interim, Lithia Motor, Inc. (Lithia), acquired several of defendants' dealerships through a purchase of their assets in March 2018.

In August 2019, defendants filed a motion for summary judgment seeking to dismiss the complaint. They alleged all of plaintiff's claims failed as a matter

6

of law because there was no evidence of damages beyond mere speculation. They addressed each cause of action and why it should be dismissed. Defendants argued the six-year statute of limitations barred any damages arising before August 14, 2011.

In September 2019, plaintiff filed a cross-motion for summary judgment. It claimed defendants owed $7,028,810 for cleaning and detailing services provided from 2011 through 2016.[5] Plaintiff claimed it should have been paid $21,648,685 but was paid only $14,619,875. Plaintiff later reduced the amount owed to $5,721,910 because it reduced the amount it should have been paid to $20,341,785. Plaintiff alleged these figures were based on defendants' records except the amount for 2011, which was based on plaintiff's records.

In July 2019, plaintiff served a subpoena duces tecum on Lithia, requesting seven categories of documents.[6] Plaintiff claimed Lithia received

---

[5] Plaintiff's complaint alleged damages of $19,647,030.40.

[6] These included:
> (1) the number of vehicles received and delivered from the manufacturer for each dealership during the years 2011 through October 2016; (2) the number of vehicles serviced by each store; (3) the number of used vehicles placed for sale; (4) the number of vehicles sold; (5) the number of loaner vehicles; (6) the number of vehicles sent to auction; and (7) the number of tract vehicles

documents from defendants when it conducted "due diligence" prior to acquiring defendants' dealerships in 2018. Lithia denied it had any "documents responsive to this subpoena."

In September 2019, plaintiff filed a motion to compel compliance with the subpoena and to impose sanctions. It alleged defendants did not provide information during discovery about "the number of loaner vehicles placed in service and the number of vehicles serviced." Plaintiff claimed the subpoena to Lithia was necessary to obtain this information.

Defendants filed a cross-motion to quash the subpoena. Defendants' director of operations certified that he did not believe Lithia would have the requested information. He also claimed the information was not relevant because "[a] raw number of vehicles serviced at a particular dealership would not bear any direct relationship to the servicing work performed on a vehicle by [p]laintiff." He certified it was plaintiff's invoices, prepared by plaintiff and submitted to defendants for payment, that were relevant to the litigation, and that these were produced to plaintiff during discovery.

_____

supplied during the same period from 2011 through October 2016.

A-2688-19

On January 29, 2020, the trial court granted defendants' motion for summary judgment and denied plaintiff's cross-motion, finding no genuine issues of material fact. It agreed with defendants that "[t]he documents plaintiff has produced contain figures which are after-the-fact reconstructions unsupported by evidence. Pure speculation, which do not create a genuine issue of material fact." The trial court noted there was "just no establishment that these invoices were owed, the work was done, and it wasn't paid." Plaintiff did not "identify any specific vehicle it serviced for which it was not compensated." There was no record produced by plaintiff of an unpaid balance with defendants.

The court found plaintiff's spreadsheets were "too speculative to serve as the basis from which a reasonable fact-finder could infer that there [were] underpayments or no payments." Plaintiff calculated the final number by using the rates plaintiff charged for services by the vehicle types held by defendants during the years in question. Plaintiff then deducted what it was paid to determine what it alleges is the underpayment. This methodology did "not distinguish between those vehicles plaintiff actually serviced and those vehicles that it may have serviced, but not definitely serviced." The court found this "after-the fact estimate of those services . . . too speculative."

9

The trial court found plaintiff's claims failed as a matter of law because it could not substantiate its damages. It found this was "fatal to all the theories." The promissory estoppel claim failed because there was "[n]o clear and definite promise to pay." The unjust enrichment claim failed because there was "a failure to show inadequate compensation for any service provided." The account stated claim failed because there was no evidence the parties agreed to an unpaid amount.

On the same date, the trial court granted defendants' cross-motion to quash the subpoena to Lithia and denied plaintiff's motion to compel. The trial court found,

> [t]he only documents relevant to the case, given the nature of the relationship with the business, are plaintiff's invoices. Plaintiff's invoices. Defendant[s] didn't invoice them. So it has to be plaintiff's invoices and proof of payment therein.
>
> There's no invoices submitted at all, any record of any outstanding balance, any evidence that plaintiffs approached defendants about [an] unpaid balance. We just have that after-the-fact reconstruction of the value.
>
> Lithia certainly has no documents on that, other than through this litigation.

The court observed that even if Lithia had documents, they would not "matter" because this "would not indicate the number of vehicles that [plaintiff]

actually serviced." However, the trial court ordered Lithia to provide a certification within twenty days regarding the requested documents. On February 6, 2020, Lithia's Vice President and Assistant Secretary certified the company was not in possession of any of the records plaintiff requested.

On appeal, plaintiff makes the following arguments:

> I. THE TRIAL JUDGE ERR[]ED FINDING THE CASE DID NOT RAISE ANY GENUINE ISSUES OF MATERIAL FACT.
>
> II. DID THE TRIAL JUDGE ERR[] WHEN DENYING EXCLUSIVE'S CROSS [-]MOTION FOR SUMMARY JUDGMENT [?]
>
> III. WAS THE TRIAL JUDGE CORRECT IN GRANTING PRESTIGE'S MOTION TO QUASH EXCLUSIVE'S MOTION TO COMPEL COMPLIANCE OF THE THIRD[-]PARTY SUBPOENA AGAINST LITHIA MOTORS, INC.?

II.

We review a summary judgment order on a de novo basis, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo

11

Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).  The factual inquiry is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 533 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The court must review the evidence presented "in the light most favorable to the non-moving party."  Id. at 540.

A.

Plaintiff claimed it provided over 700,000 separate services for defendants.  Based on the fee schedule in the Agreement, plaintiff calculated it should have been paid $20,341,785, but was paid $14,619,875, leaving a difference of $5,721,910.  Plaintiff alleges defendants owe this amount for unpaid services.  Plaintiff did not present individual invoices to show damages, claiming this was impractical.  It prepared spreadsheets that it claimed were based on plaintiff's and defendants' records.

We agree with the trial court that plaintiff did not create a genuine issue of material fact.  Defendants supported their summary judgment motion with copies of plaintiff's invoices and proof these were paid.  However, plaintiff did not submit evidence that any of the invoices it provided to defendants were not

12

paid. It did not identify any vehicle or vehicles it serviced for which it was not paid. It did not show that any of the information submitted by defendants was incorrect. All it did was multiply the fee schedule price per (vehicle) service by the number of various types of vehicles allegedly serviced. This is inadequate to raise genuine factual questions that are material when it is undisputed that plaintiff was paid based on the presentation of invoices it prepared with specific details about the vehicles plaintiff serviced. There are no records that plaintiff requested additional payments, even though it is undisputed plaintiff was paid on a weekly basis and could have contemporaneously noted underpayments and demanded payment for same.

Plaintiff alleges the trial court erred by not addressing certain issues. It argues, the trial court should have determined whether there were yearly contracts between the parties, whether there were "factual issues raised by the numerous conflicting certifications" and whether plaintiff's records were destroyed. Plaintiff argues the court erred by finding plaintiff did not service all of defendants' vehicles and customers, and by finding, without taking testimony, that plaintiff's damages were speculative. Plaintiff contends it did not need to submit "volumes of itemized statements and documents" to defeat summary judgment. We do not agree these issues precluded summary judgment.

13

Whether there were yearly contracts is not relevant to plaintiff's claim of underpayment. No one disputed the amounts listed on the Agreement's fee schedule or that services were provided through October 2016. It does not matter to the outcome of the summary judgment motions whether there were written contracts from 2011 to 2016.

The certifications did not raise fact issues that were material to plaintiff's claims. As noted, there was no correspondence to support plaintiff's claims that money was due. If defendants disposed of plaintiff's invoices, plaintiff never produced its own copies or records from its computers. Lithia did not have the records that plaintiff was requesting. There is no dispute that plaintiff billed defendants on a per-vehicle-serviced basis and not based on the gross number of vehicles that defendants serviced at its dealerships. Thus, plaintiff's pursuit of defendants' gross service records did not raise a genuine issue of fact that plaintiff was not paid for the services it provided to defendants.

A party asserting claims has the burden of proof to establish all elements of its causes of action, including damages. Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., 358 N.J. Super. 484, 503 (App. Div. 2003). Though a party may not be tasked with proving its damages with exact precision, a party remains tasked with proving its damages with, at a minimum, "such

certainty as the nature of the case may permit, laying a foundation which will enable the trier of facts to make a fair and reasonable estimate." Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987). However, "the 'law abhors damages based on mere speculation.'" Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 128 (App. Div. 2002) (quoting Caldwell v. Haynes, 136 N.J. 422, 442 (1994)).

We agree with the trial court's conclusion that plaintiff did not show it had damages. Count One of plaintiff's complaint alleged a breach of contract. Even if plaintiff could prove there was a contract from 2011 to 2016, plaintiff could not prove a breach of contract without proof of damages that were related to the breach. Plaintiff did not show invoices that were not paid or provide proof it was not paid for vehicles it serviced.

Count Two's claim for promissory estoppel required proof of a clear and definite promise and reasonable reliance. Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008). Plaintiff alleges a generalized claim it would be paid, with no proof of a clear and definite promise.

Count Three alleged a claim of unjust enrichment. Plaintiff must prove "that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554

(1994). Without proof of damages, however, plaintiff could not maintain this claim.

Court Four is for an account stated. Claims for an account stated arise when a debtor acknowledges an indebtedness to a creditor. Harris v. Merlino, 137 N.J.L. 717, 720 (E. & A. 1948). There is no proof that defendants acknowledged any indebtedness to plaintiff.[7]

Plaintiff's claim that its cross-motion for summary judgment should have been granted is answered in the negative by our analysis that defendants' summary judgment motion was properly granted. We do not need to further address this in a written opinion. R. 2:11-3(e)(1)(E).

B.

Plaintiff argues the trial court erred by quashing the subpoena to Lithia. It argues the trial court should have granted its motion to compel compliance.

Decisions of trial courts on discovery matters are upheld unless they constitute an abuse of discretion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). We review the trial court's decision to quash a subpoena "pursuant to an indulgent standard of review." In re Subpoena Duces

---

[7] We do not address defendants' statute of limitations arguments because the trial court did not address them.

Tecum, 214 N.J. 147, 162 (2013). "It is well settled that the subject of a [s]ubpoena duces tecum must be specified with reasonable certainty, and that there must be a substantial showing that the evidence sought to be adduced is relevant and material to the issues of the case." Wasserstein v. Swern & Co., 84 N.J. Super. 1, 6-7 (App. Div.1964).

The subpoena sought the number of vehicles "serviced" by the dealership. The trial court noted this "would not indicate the number of vehicles that [plaintiff] actually serviced." That figure would be based on plaintiff's own invoices, and there were "no invoices submitted at all, any record of any outstanding balance, any evidence that plaintiff[] approached defendants about [an] unpaid balance." Lithia certified it did not obtain any of the requested information. Plaintiff has not disputed that Lithia does not have the records requested. On this record, plaintiff did not show an abuse of discretion by the trial court in quashing the subpoena to Lithia.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION